[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff Jeanne Rossi's appeal from a May 14, 2003 Employees Retirement System Board (Retirement Board) Decision, denying Plaintiff's application for an accidental disability pension. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
The events leading up to this dispute date back to 1992. On April 18, 1992, Plaintiff, a Juvenile Program Worker with the Rhode Island Department of Children, Youth and Families at the Rhode Island Training School, attempted to stop a juvenile from escaping. During this incident, Plaintiff was hit in the face with a large gate, causing her to suffer a broken nose, injury to the neck and back, and chipped teeth. As a result of this incident, Plaintiff was out of work for approximately seven years. Plaintiff returned to work on light duty on June 11, 1999.
On June 23, 2000, Plaintiff reported that she had developed headaches and pain in her neck that radiated down both arms and wrists. Plaintiff stated in her report that these conditions were not the result of one specific incident, but that her symptoms developed over a period of time. As a result of her condition, on February 20, 2002, Plaintiff filed an application to receive an accidental disability pension.
The Disability Subcommittee reviewed Plaintiff's application and the medical reports of three independent medical examiners. At its subsequent meeting of July 9, 2002, the Subcommittee denied Plaintiff's application for an accidental disability pension, finding that Plaintiff did not meet the requirements under G.L. 1956 § 36-10-14 to qualify for an accidental disability pension.
Section 36-10-14, entitled "Retirement for Accidental Disability," states as follows:
 "(a) Medical examination of an active member for accidental disability, and investigation of all statements and certificates by him or her or in his or her behalf in connection therewith, shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member should, therefore, be retired.
 (b) Such application shall be made within five (5) years of the alleged accident from which the injury has resulted in the member's present disability, and shall be accompanied by an accident report and a physicians report certifying to the disability; providing, that, if the member was able to return to his or her employment and subsequently re-injures or aggravates the same injury, the application shall be made within the later of five (5) years of the alleged incident or three (3) years of the re-injury or aggravation.
 (c) If a medical examination conducted by three (3) physicians engaged by the retirement board, and such investigation as the retirement board may desire to make, shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident, while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability and the retirement board may grant the member an accidental disability benefit.
 (d) The retirement board shall establish uniform eligibility requirements, standards, and criteria for accidental disability which shall apply to all members who made application for accidental disability benefits."
On July 10, 2002, the Retirement Board affirmed the decision of the Disability Subcommittee which had denied Plaintiff's application. Plaintiff appealed the Retirement Board's administrative decision, and a hearing on the appeal was held by the Disability Subcommittee on October 4, 2002.
The Disability Subcommittee once again voted to deny Plaintiff's application, and Plaintiff again appealed the denial to the Retirement Board. Plaintiff, accompanied by counsel, appeared before the Retirement Board on May 14, 2003. After hearing testimony from Plaintiff and oral argument from the attorneys representing Plaintiff and the Retirement System, the Retirement Board voted to affirm the Decision of the Disability Subcommittee. It is from the denial, pursuant to the Administrative Procedures Act, that this appeal is taken.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This statute precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry ofMotor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflictof Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v. George Sherman Sand GravelCo., 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v.Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). A Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981).
Although questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts, Carmody v. R.I. Conflicts of Interests Commission,509 A.2d at 458, the Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence.Rhode Island Public Telecommunications Authority v. Rhode Island LaborRelations Board, 650 A.2d 479, 485 (R.I. 1994).
 The Evidence before the Board
The Plaintiff maintains on appeal that the Retirement Board erred in denying her application on the grounds that she did not identify the "aggravation or injury" that ultimately caused her to be permanently disabled from her employment as a Juvenile Program Worker at the Rhode Island Department of Children, Youth and Families. Plaintiff claims that the unrebutted medical evidence presented to the Board supports Plaintiff's position that she is permanently disabled from her regular duties. Additionally, Plaintiff contends that the uncontradicted evidence presented to the Board demonstrates that she suffered an aggravation of her preexisting work injury on June 23, 2000. The Board disagreed. After a review of the Plaintiff's application and medical reports of the three independent physicians, the Board affirmed the Disability Subcommittee. The Board found that there was no evidence substantiating an aggravation or re-injury within three years of the filing of Plaintiff's application for an accidental disability pension.
The evidence clearly demonstrates that Plaintiff is suffering from a disability. Dr. Buonanno and Dr. Morrisey are in agreement that Plaintiff is completely disabled from doing her job. Dr. Garrahan's report states that while Plaintiff is "not completely disabled," she is "disabled from physical contact." (Defendant's Exhibits 8, 9, and 10.) Furthermore, the evidence presented to the Board reveals that she was injured while performing her duties as a juvenile program worker. Dr. Buonanno, states in his May 21, 2002 medical report, that the patient's "history regarding her neck and symptoms radiating to both her arms and radiculopathy are related to the events of not only 1992 but the year 2000 as she described to me." (Defendant's Exhibit 8.) Dr. Morrisey indicates in his June 13, 2002 medical report, that the "patient's injury of April of 1992 and a second injury of June 23, 2000 when she was on a light duty program hurting her neck again by doing overhead activities observing monitors at a watch station as part of the security guard position [were] the probable causes of pain." (Defendant's Exhibit 10.) Dr. Garrahan's May 9, 2002 medical report states that the "patient appears to have residual complaints consistent with the cervical spine injury sustained in 1992." (Defendant's Exhibit 9.)
Section 36-10-14 states that ". . . the [three independent] physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability, and the retirement board may grant the member an accidental disability benefit." The evidence presented supports the Board's finding that there was no specific incident which caused an aggravation or re-injury of the 1992 accident within three years of the filing of Plaintiff's application. Dr. Buonanno believes that Plaintiff's injuries are "causally related" to Plaintiff's accident in April of 1992 and the events of June 2000. (Defendant's Exhibit 8.) Dr. Morrisey believes that there was a "second injury" on June 23, 2000 which contributed to Plaintiff's neck pains. However, nothing in Dr. Morrisey's report states that the events of June 2000 were related to the patient's injury in April of 1992. (Defendant's Exhibit 10.) As indicated above, Dr. Garrahan believes that the Plaintiff appears to have "residual complaints" relating to the 1992 incident. (Defendant's Exhibit 9.) Nothing in Dr. Garrahan's report identifies a specific incident causing an aggravation or re-injury of the April 1992 injury. Moreover, Dr. Garrahan's description of Plaintiff's complaint during her initial exam states that Plaintiff "returned to light duty work on 6/11/99" and that "this work required her to reach over her head constantly and on 6/23/00, she came out of work." (Defendant's Exhibit 9.) This description of Plaintiff's complaint further demonstrates that there was no specific incident that caused an aggravation of the injury Plaintiff suffered in April 1992.
In the instant matter, the Board clearly did not have before it three independent physicians certifying to it a time, place, and conditions of service performed by the plaintiff which resulted in the disability. Additionally, because the Board's findings were not "totally devoid of competent evidentiary support" with respect to the opinions of the physicians, the Board was not clearly erroneous in its assessments of the reports. See Baker v. Department of Employment Training Bd. OfReview, 637 A.2d 360, 363 (R.I. 1994). Therefore, the Board's decision to deny the accidental disability benefit is supported by substantial evidence of record.
Additionally, on appeal the Plaintiff bears the burden of proof. Plaintiff's application does not cite a specific incident which caused an aggravation of the April 1992 injury. This evidence is consistent with Plaintiff's hearing testimony. During the May 14, 2003 hearing before the Board, Plaintiff testified that "[t]here were many things going on and during the course of having to do all of those functions, at some point [she] might have turned the wrong way or something happened, and it isn't something that happened every day." Plaintiff went on to state that she "was able to do the job and on occasion if something different happened or [she] turned, [she] had a problem." (Board hearing May 14, 2003, tr. at 18.) Based on this testimony, the record reflects that Plaintiff herself could not identify a specific incident which caused an aggravation of the injury she sustained in April of 1992. Consequently, the Board's decision that Plaintiff did not meet the requirements of §36-10-4 is supported by the Plaintiff's own testimony at the May 14, 2003 hearing.
After review of the entire record, the Court finds the decision of the Employee Retirement System Board is supported by the reliable, probative, and substantive evidence of record and is not arbitrary. Substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Employees' Retirement System for the State of Rhode Island is hereby affirmed.
Counsel for Defendant shall prepare the appropriate judgment for entry.